UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- :
 :
CAROLE REISS, :
 :
                     Plaintiff, :
 :
           -against- :
 :
MELITINA HERNANDEZ, *et al.,* :
 :
               Defendants. :
 :
------------------------------------------- :

                17cv159

                <u>MEMORANDUM & ORDER</u>

WILLIAM H. PAULEY III, Senior United States District Judge:

         Defendants New York City Department of Education ("BOE"), Melitina Hernandez, and Jennifer Johnson (collectively, "Defendants") move for summary judgment dismissing <u>pro se</u> Plaintiff Carole Reiss's discrimination, retaliation, and constructive discharge action brought under the Age Discrimination in Employment Act ("ADEA"). For the reasons that follow, Defendants' motion for summary judgment is granted.

BACKGROUND

         Reiss began working for the BOE as a substitute health science teacher in 1974. (Defs.' Local Civil Rule 56.1 Statement of Material Facts in Supp. of its Mot. for Summ. J., ECF No. 64 ("Defs.' 56.1"), ¶ 1; Pl.'s Resp. to Defs.' Local Civil Rule 56.1 Statement, ECF No. 70 ("Pl.'s 56.1"), ¶ 1.) In 2013, she was placed as a permanent physical education teacher at P.S. 123 Mahalia Jackson ("P.S. 123"). (Defs.' 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.) Reiss also taught health as a "push in" teacher at P.S. 123, though she claims to only have taught it in her last year at the school. (Defs.' 56.1 ¶¶ 2, 4; Pl.'s 56.1 ¶¶ 2, 4.)

         Prior to the 2013-14 school year, the BOE rated teachers based on classroom observations as either "satisfactory" or "unsatisfactory." (Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10.)

Reiss avers that she always received "satisfactory" ratings under that system. (Pl. Carol Reiss'

Decl. in Opp'n, ECF No. 69 ("Reiss Decl."), ¶ 2.) However, beginning in the 2013-14 school

year, the BOE began evaluating teachers using the new ADVANCE system. (Defs.' 56.1 ¶¶ 5, 7;

Pl.'s 56.1 ¶¶ 5, 7.) The BOE used this system throughout the relevant time period of this lawsuit.

(Defs.' 56.1 ¶¶ 5, 7, 37, 86; Pl.'s 56.1 ¶¶ 5, 7, 37, 86.)

       The ADVANCE system uses multiple components to evaluate teachers. (Defs.'

56.1 ¶ 6; Pl.'s 56.1 ¶ 6.) The Measures of Teacher Practice ("MOTP") component—which

includes teacher observations—comprises 60% of ADVANCE's "end of year overall rating."

(Defs.' 56.1 ¶¶ 7, 11, 12; Pl.'s 56.1 ¶¶ 7, 11, 12.) The remaining 40% of an end-of-year rating is

comprised of Measures of Student Learning. (Defs.' 56.1 ¶¶ 7, 11, 17; Pl.'s 56.1 ¶¶ 7, 11, 17.)

The ADVANCE system also implemented a new rating scale that uses the categories "highly

effective," "effective," "developing," and "ineffective." (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.)

       After the 2013-14 school year, Principal Melitina Hernandez ("Principal

Hernandez"), who became principal in April 2013, gave Reiss an overall rating of "effective."

(Defs.' 56.1 ¶¶ 2, 19; Pl.'s 56.1 ¶¶ 2, 19.) But Reiss's ratings declined in subsequent years,

although Reiss maintains that her pedagogy did not change after the 2013-14 school year. (Reiss

Decl. ¶ 20.) Notably, at the start of the 2014-15 school year, Jennifer Johnson ("AP Johnson")

became an Assistant Principal at P.S. 123. (Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27.)

       During the 2014-15 school year, observers—including AP Johnson and Principal

Hernandez on two occasions—rated Reiss "ineffective" in most observation components for all

five of her observations. (Defs.' 56.1 ¶¶ 43–47; Pl.'s 56.1 ¶¶ 43–47.) Accordingly, Reiss

received a rating of "ineffective" for her MOTP and as her overall rating. (Defs' 56.1 ¶¶ 48, 56;

Pl.'s 56.1 ¶¶ 48, 56.) That same year, 32 tenured teachers aged 40 years or older at P.S. 123

received an end-of-year rating.  (Defs.' 56.1 ¶ 64; Pl.'s 56.1 ¶ 64.)  Of those 32, 20 received

either "effective" or "satisfactory" ratings, eight received "developing" ratings, and four received

"ineffective" ratings.  (Defs.' 56.1 ¶¶ 64–67; Pl.'s 56.1 ¶¶ 64–67.)[1]  There were also seven

tenured teachers under 40 years old at P.S. 123 that school year.  (Defs.' 56.1 ¶ 68; Pl.'s 56.1

¶ 68.)  Of those seven, five received "effective" ratings, while two received "developing" ratings.

(Defs.' 56.1 ¶¶ 69–70; Pl.'s 56.1 ¶¶ 69–70.)  Reiss appealed her 2014-15 "ineffective" rating to a

Chancellor's Committee, but she did not prevail.  (Defs.' 56.1 ¶¶ 58–63; Pl.'s 56.1 ¶¶ 58–63.)

Reiss maintains that this evaluation—as well as her 2015-16 evaluation—was done improperly.

(See Reiss Decl. ¶ 3.)

Reiss's "ineffective" MOTP rating prompted a June 15, 2015 meeting with

Assistant Principal Jacqueline Thorne-Figueroa ("AP Thorne-Figueroa") and Principal

Hernandez.  (Defs.' 56.1 ¶ 49; Pl.'s 56.1 ¶ 49.)  On June 24, 2015, BOE officials reviewed

Reiss's file and noted that the original copy of a May 15, 2015 disciplinary letter was missing.

(Defs.' 56.1 ¶ 50; Pl.'s 56.1 ¶ 50.)  That letter summarized a May 14, 2015 meeting between

Reiss, AP Johnson, Principal Hernandez, and Reiss's union representative at which they

discussed "several situations that involved [Reiss's] students . . . leaving the gym in the basement

and roaming around the building," including one situation in which students created a flood.

(Decl. of Assistant Corporation Counsel Samantha P. Turetsky, ECF No. 65 ("Turetsky Decl."),

Ex. R.)  At the May 14, 2015 meeting, AP Johnson advised Reiss that "this incident may lead to

further disciplinary action including an adverse rating and charges that could lead to"

termination.  (Defs.' 56.1 ¶ 36; Pl.'s 56.1 ¶ 36.)  Reiss maintains that the flooding incident has

been mischaracterized, in that the flood started in a different classroom.  (Reiss Decl. ¶ 7.)

---

[1]      Apparently, some teachers were still rated on the "satisfactory" scale.

Ultimately, BOE officials realized Reiss had the original copy of the letter, and AP Thorne-Figueroa and Principal Hernandez questioned her about how and why she had it in her possession. (Defs.' 56.1 ¶¶ 50–55; Pl.'s 56.1 ¶¶ 50–55.) The parties dispute the overall tone of the questioning. Specifically, Defendants claim that Reiss became argumentative and unprofessional during their discussion, and they generally intimate that Reiss may have stolen the letter at the June 15 meeting. (Defs.' 56.1 ¶¶ 50-55.) Reiss claims that Defendants wrongfully accused her of taking the letter and that AP Thorne-Figueroa "verbally attacked" her. (Pl.'s' 56.1 ¶¶ 50-55; Reiss Decl. ¶ 22.) She also maintains that she behaved professionally at the meeting. (Reiss Decl. ¶ 23.) Further, Reiss states that the letter "was removed from [her] file at the direction of" her union representative. (Reiss Decl. ¶ 24.)

Further as a result of her "ineffective" rating, Reiss was placed on a Teacher Improvement Plan ("TIP") leading into the 2015-16 school year. (Defs.' 56.1 ¶ 71; Pl.'s 56.1 ¶ 71.) TIPs include specific areas for improvement, along with recommendations and timelines for meeting those goals. (Defs.' 56.1 ¶ 74; Pl.'s 56.1 ¶ 74.) During the 2015-16 school year, Reiss also had several run-ins with Principal Hernandez. On May 15, 2016, Hernandez instructed Reiss to include activities other than basketball in her classes after parents and students complained about her curriculum's lack of diversity. (Defs.' 56.1 ¶¶ 75–78; Pl.'s 56.1 ¶¶ 75, 77–78; Turetsky Decl. Ex. AA.) Consequently, Reiss instructed her class that "they could not play basketball during their free enterprise time and that they must leave their basketballs at home." (Pl.'s 56.1 ¶ 78.) Reiss also apparently questioned students during an observation about what they said to AP Johnson regarding Reiss's class. (Defs.' 56.1 ¶ 83; Pl.'s 56.1 ¶ 83.) In response, Principal Hernandez sent Reiss a letter claiming her conduct was insubordinate and unprofessional. (Defs.' 56.1 ¶ 79; Pl.'s 56.1 ¶ 79.) The letter alleged that Reiss's statement to

the class misrepresented Principal Hernandez's instruction to diversify the curriculum. (Defs.' 56.1 ¶ 81; Pl.'s 56.1 ¶ 81.)

On June 27, 2016, Principal Hernandez and AP Johnson held a disciplinary meeting with Reiss to address her alleged failure to supervise students. (Defs.' 56.1 ¶¶ 84–85; Pl.'s 56.1 ¶¶ 84–85.) Specifically, Principal Hernandez and AP Johnson alleged that Reiss failed to supervise her students and created an unsafe environment by permitting students to practice a dance performance during class without prior approval of the principal. (Defs.' 56.1 ¶¶ 84–85; Pl.'s 56.1 ¶¶ 84–85.) Reiss claims that she supervised the students and, in any event, the students told her AP Johnson had given them permission to dance. (Pl.'s 56.1 ¶ 84; Reiss Decl. ¶ 33.)

During the 2015-16 school year, Reiss partook in six informal observations— three of which were conducted by AP Johnson or Principal Hernandez. In four of the observations, the BOE rated Reiss "ineffective" or "n/a" in most categories. (Defs.' 56.1 ¶¶ 87–93; Pl.'s 56.1 ¶¶ 87–93.) In the remaining two observations, the BOE rated Reiss "developing" or "n/a" in most categories. (Defs.' 56.1 ¶¶ 90, 93; Pl.'s 56.1 ¶ 87–93.) Reiss disputes one of those observations, claiming that she was not actually evaluated. (Pl.'s 56.1 ¶ 92.) In any event, Reiss received an overall rating of "ineffective" for the 2015-16 school year. (Defs.' 56.1 ¶¶ 94–95; Pl.'s 56.1 ¶¶ 94–95.) That same school year, 28 tenured teachers aged 40 or older at P.S. 123 received an end-of-year rating. (Defs.' 56.1 ¶ 103.) Of those 28, 18 received either "effective" or "satisfactory" ratings, seven received "developing" ratings, and three received "ineffective" ratings. (Defs.' 56.1 ¶¶ 104–06; Pl.'s 56.1 ¶¶ 104–06.) The parties do not break down the statistics on teachers below 40 years old for that school year. Reiss appealed her 2015-16 "ineffective" rating to a Chancellor's Committee, who rejected her claims. (Defs.' 56.1 ¶¶ 96– 102; Pl.'s 56.1 ¶¶ 96–102.)

In response to her "ineffective" ratings and the disciplinary measures she faced, Reiss filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") around July 1, 2016. (Defs.' 56.1 ¶ 116; Pl.'s 56.1 ¶ 116.) In addition, Reiss retired from her BOE position, effective July 28, 2016. (Defs.' 56.1 ¶ 114; Pl.'s 56.1 ¶ 114.) Reiss claims she would have been subjected to a mandatory § 3020-a proceeding under New York Education Law had she not retired because she received an ineffective rating two years in a row.[2] (Pl.'s 56.1 ¶ 114.) As such, she claims her retirement was forced because an adverse outcome at a § 3020-a proceeding would have left her unable to find another teaching job. (Pl.'s 56.1 ¶ 114.) However, Defendants never initiated such a proceeding. (Defs.' 56.1 ¶ 115.)

Reiss has attempted to open a charter school since 2006. (Defs.' 56.1 ¶¶ 107–13; Pl.'s 56.1 ¶¶ 107–13.) The New York State Education Department ("NYSED") has denied all of Reiss's applications to open a charter school since Reiss filed her first application in 2006. (Defs.' 56.1 ¶¶ 107–08; Pl.'s 56.1 ¶¶ 107–08.) Reiss submitted her most recent application on February 8, 2018, claiming to be a teacher and "professional developer." (Defs.' 56.1 ¶¶ 109–11; Pl.'s 56.1 ¶¶ 109–11.) Reiss claims that she "engaged in professional development" and was thus a "professional developer." (Reiss Decl. ¶ 44.) In response, the NYSED contacted Principal Hernandez to inquire "whether [Reiss] was a professional developer or a gym teacher" at P.S. 123. (Defs.' 56.1 ¶¶ 110–11; Pl.'s 56.1 ¶¶ 110–11.) Principal Hernandez responded that Reiss was a gym teacher. (Defs.' 56.1 ¶ 112; Pl.'s 56.1 ¶ 112.) Reiss asserts that Principal Hernandez's statement was false and made while aware of Reiss's EEOC charge. (Pl.'s 56.1 ¶¶ 111–113.) Ultimately, the NYSED rejected Reiss's charter school application for several

---

[2]      New York Education Law § 3020-a outlines the requirements for disciplinary proceedings against tenured teachers in the state of New York.

6

reasons, including that there were misleading statements on her information sheet and resume. (Defs.' 56.1 ¶ 113; Pl.'s 56.1 ¶ 113; Turetsky Decl. Ex. SS.)

DISCUSSION

I.    Standard

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015) (quotation marks omitted). This Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); Upadhyay v. Sethi, 848 F. Supp. 2d 439, 446 (S.D.N.Y. 2012) (denying summary judgment where court would have had to weigh the credibility of dueling affidavits).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the moving party meets its burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 249 (citation and quotation marks omitted); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted). "In determining whether a

genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

In addition, "when [a] plaintiff proceeds pro se, as in this case, a court is obliged to construe h[er] [papers] liberally." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Haines v. Kerner, 404 U.S. 519, 520 (1972). Therefore, this Court affords Reiss "special solicitude" by interpreting her brief "to raise the strongest [arguments] that it suggests." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

Finally, the Second Circuit "has repeatedly emphasized the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (quotation marks omitted). However, "[e]ven in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and show more than some metaphysical doubt as to the material facts." Gorzynski, 596 F.3d at 101 (citation and quotation marks omitted).

II.   Merits

Defendants argue that summary judgment dismissing the action in its entirety should be granted because: (1) Reiss's claims are partially time-barred; (2) her claims against Principal Hernandez and AP Johnson must be dismissed because there is no individual liability under the ADEA; (3) the ADEA claims fail on substantive grounds.

A.  Statute of Limitations

Defendants argue that Reiss's ADEA claims should be dismissed in part as time-barred.  Specifically, Defendants argue that because Reiss filed her EEOC charge on July 1, 2016, any claims relating to conduct before September 5, 2015—300 days before the EEOC charge—are untimely.  Reiss counters that because her 2014-15 performance evaluation was given on September 22, 2015, it is timely (along with her 2015-16 evaluation).  She also argues that pre-September 5, 2015 conduct was part of a "pattern" of discrimination.

Typically, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the . . . 300–day time period after the discrete discriminatory act occurred."  Nat. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  However, "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."  Nat. R.R. Passenger Corp., 536 U.S. at 113 (emphasis added).

Moreover, under the continuing violation doctrine, if a "plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155–56 (2d Cir. 2012) (quotation marks omitted); see Betterson v. HSBC Bank USA, N.A., 661 F. App'x 87, 89 n.1 (2d Cir. 2016) (applying this standard to an ADEA claim).  But that "doctrine

applies only to claims composed of a series of separate acts that collectively constitute one unlawful practice. As such, the doctrine generally applies to hostile work environment claims," rather than to discrete discriminatory acts. Velez v. N.Y.C. Police Pension Fund Article II, 2019 WL 1382884, at *7 (S.D.N.Y. Mar. 27, 2019) (quotation marks and citations omitted); see Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 459 (S.D.N.Y. 2014). Specifically, the "doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Velez, 2019 WL 1382884, at *7 (quotation marks omitted); accord Chin, 685 F.3d at 157. "[U]nsatisfactory performance reviews are discrete acts that constitute separate actionable employment practices." Hausdorf v. NYC Dep't of Educ., 2018 WL 1871945, at *5 (S.D.N.Y. Jan. 25, 2018), report and recommendation adopted, 2018 WL 895657 (S.D.N.Y. Feb. 14, 2018).

Accordingly, Reiss's general discrimination claims are time-barred to the extent they relate to conduct occurring before September 5, 2015. However, this would not preclude claims related to her 2014-15 and 2015-16 "ineffective" ratings—which constitute the bulk of her discrimination claims—and Reiss may also rely on pre-September 5, 2015 conduct as background evidence. Further, Reiss's claims for retaliation and constructive discharge are timely because they relate to her termination and subsequent attempt to start a charter school, both of which occurred after September 5, 2015.

B. Claims Against the Individual Defendants

"[T]he ADEA does not impose liability on individuals." See Wang v. Palmisano, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016); see Ferraro v. N.Y.C. Dep't of Educ., 2010 WL 3912466 (S.D.N.Y. Sept. 14, 2010). And Reiss concedes that she cannot bring an ADEA against

individuals.  (See Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J., ECF No. 71 ("Opp'n"), at 1 n.1.)  Accordingly, Reiss's claims against Principal Hernandez and AP Johnson are dismissed.

C.  Substantive ADEA Claims

The Second Circuit applies the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for ADEA claims.  See Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012).  First, Reiss must establish a prima facie case for discrimination, retaliation, or constructive discharge.  See Gorzynski, 596 F.3d at 106.  Second, the burden shifts to Defendants to provide a non-discriminatory basis for their actions.  See Bucalo, 691 F.3d at 128–29.  Finally, the burden shifts back to Reiss to prove that Defendants' claimed non-discriminatory basis was a pretext for discrimination.  See Bucalo, 691 F.3d at 129.

1.  Discrimination Under the ADEA

"To establish a prima facie case, a plaintiff with an age discrimination claim must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  Bucalo, 691 F.3d at 129. Defendants contest only whether there were adverse employment actions and whether those alleged actions occurred under circumstances giving rise to an inference of discrimination.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quotation marks omitted).  "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of materially adverse changes include termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (quotation marks and citations omitted).

"In the context of a discrimination claim, negative evaluations, criticism and unwanted scrutiny are not adverse employment actions absent a showing that such actions affected the terms and conditions of the plaintiff's employment." Spaulding v. N.Y.C. Dep't of Educ., 2015 WL 12645530, at *35 (E.D.N.Y. Feb. 19, 2015), report and recommendation adopted, 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015); see also Farina v. Branford Bd. of Educ., 458 F. App'x 13, 17 (2d Cir. 2011) ("'[N]egative employment evaluation letters[]' or reprimands may be considered adverse employment actions," but only where there is proof that those actions had an "'effect on the terms and conditions of [an employee's] employment.'" (quoting Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) and Sanders v. N.Y.C. Human Resources Admin., 361 F.3d 749, 756 (2d Cir. 2004))); Weber v. City of New York, 973 F. Supp. 2d 227, 252 (E.D.N.Y. 2013). For instance, in Weber, a judge in this circuit held that unsatisfactory performance evaluations which led to the initiation of a § 3020-a proceeding and ultimately a teacher's suspension were adverse employment actions because the suspension materially changed the teacher's terms and conditions of employment. See Weber, 973 F. Supp. 2d at 251. However, the court also held that the initiation of an Office of Employment Opportunity investigation—which led to no discipline—was not an adverse employment action because it did not change the teacher's terms or conditions of employment. See Weber 973 F. Supp. 3d at 252.

Here, Reiss advances four types of adverse employment actions: (1) negative evaluations (including two "ineffective" ratings)—which she claims would have led to a § 3020-

a proceeding had she not resigned; (2) disciplinary letters; (3) placement on a TIP due to her two consecutive "ineffective" ratings; and (4) the denial of "per session" work, including work in summer school and after-school programs. In addition, she claims she was constructively discharged, which this Court discusses in a separate section.

With respect to the negative reviews and disciplinary letters, there are no disputed issues of fact regarding whether they changed the terms or conditions of Reiss's employment. Reiss's argument that her "ineffective" ratings triggered a § 3020-a proceeding is unavailing because she resigned before the initiation of any such proceeding. And as discussed below, Reiss could have waited to see whether BOE would have initiated a § 3020-a proceeding, and if it did, she could have contested it or settled any claims. Accordingly, the negative evaluations and disciplinary letters themselves are not adverse actions. See Weber 973 F. Supp. 3d at 252.

Reiss's placement on a TIP is also not an adverse employment action. Reiss's TIP sets forth "[a]reas for [i]mprovement" and "[a]ction [s]teps/[a]ctivities," along with a timeline for achieving those action steps and activities. (See Turetsky Decl. Ex. Z.) Moreover, the TIP identifies resources Reiss could use to assist her performance. (See Turetsky Decl. Ex. Z.) Indeed, the 2015-16 Advance Guide for Educators (the "Guide") states that "[t]he purpose of a TIP is to assist teachers to work to their fullest potential." (Turetsky Decl. Ex. EE.) Moreover, the Guide explains that a "TIP should in no way be construed as disciplinary in nature and should be seen by all parties involved as a way to improve educator effectiveness through professional development." (Turetsky Decl. Ex. EE.) At most, a TIP is an "alteration of job responsibilities" and is not an adverse employment action. Vega, 801 F.3d at 85 (quotation marks omitted).

Finally, Reiss argues that the denial of per session work constitutes an adverse employment action. Specifically, she claims she was denied per session work in summer school and after-school programs. While Reiss does not point to evidence that she applied for these programs, she did testify that her ineffective rating made her ineligible for these programs, that she did not participate in them after receiving her first ineffective rating, and that per session work earns an hourly wage. (See Turetsky Decl. Ex. A at 131:23–132:21 ("Well, once I got the first ineffective I was no longer able to . . . do the C.H.A.M.P.S. program anymore and wasn't able to do summer school. . . . Q. In terms of per session work, is that an hourly payment? A. Yes.").) And the denial of per session work could be considered an adverse employment action, especially given its hourly wages. See Miller v. Dep't of Educ. of City of N.Y., 2018 WL 1468703, at *3 (S.D.N.Y. Mar. 23, 2018) (finding plausible adverse action where "[teacher's] evaluation rendered her ineligible for 'per session' work, where she could have also made extra money"); Dimitracopoulos v. City of New York, 26 F. Supp. 3d 200, 217 (E.D.N.Y. 2014) (holding that denial of per session work to a teacher could constitute an adverse employment action); see also Vega, 801 F.3d at 85 (explaining that a "decrease in wage or salary" could be an adverse employment action).[3] Therefore, Reiss successfully demonstrates that the denials of per session work—by way of her "ineffective" ratings—were adverse employment actions.

Accordingly, Reiss must demonstrate that she was denied per session work—or, more specifically, that she was given "ineffective" ratings which led to the denial of per session work—under circumstances giving rise to an inference of discrimination. To establish that an adverse employment action occurred under circumstances giving rise to an inference of

---

[3]     Defendants contend that any arguments related to the CHAMPS program are time barred. However, Reiss claims that she was denied per session work after receiving her ineffective ratings. Accordingly, her claims are still valid to the extent they relate to per session work she was denied on or after September 5, 2015.

discrimination, Reiss must show that "age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). But the burden here "is not a heavy one." Gorzynski, 596 F.3d at 107. And it "may be satisfied in a variety of ways," including through "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, [and] preferential treatment given to employees outside the protected class." Chertkova v. Conn. General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citations omitted); see also Shands v. Lakeland Cent. Sch. Dist., 2017 WL 1194699, at *5 (S.D.N.Y. Mar. 30, 2017) ("An age discrimination plaintiff may also seek to rely on . . . comments or remarks evidencing ageist views, evidence that similarly situated younger employees are treated more favorably than older ones, or statistical evidence demonstrating a pattern of adverse employment actions taken against older employees." (ellipsis in original) (quotation marks omitted)).

While BOE correctly points out that the literal reason Reiss was denied per session work was because of her "ineffective" ratings, Reiss argues that the circumstances surrounding those ineffective ratings support an inference of discrimination. She claims that older teachers disproportionately were given poor ratings compared to younger teachers after BOE moved to the ADVANCE rating system—which she claims was implemented to push out older teachers. She also claims that two other teachers over age 50 were terminated. (Second Am. Compl., ECF No. 47 ("Compl."), ¶ 16.) In addition, she argues that BOE employees made several ageist remarks to her.[4] Although this Court has qualms with Reiss's evidence, it moves

---

[4]     Reiss makes several other claims of poor treatment, but none relate to her age. For instance, she claims that Principal Hernandez and AP Johnson gave her inaccurate evaluations and that she was put on a TIP, but she fails to offer any evidence indicating that these actions were taken because of Reiss's age. Accordingly, this Court disregards them. See Smith v. Bronx Cmty. Coll. Ass'n, 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017) ("It is well established, however, that a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination.").

to the second <u>McDonnell Douglas</u> step, given the low burden at this stage and the special solicitude Reiss is granted as a <u>pro se</u> plaintiff.

At the second <u>McDonnell Douglas</u> step, the burden shifts to Defendants to provide a non-discriminatory basis for their actions. They succeed by pointing to Reiss's ineffective ratings, which Reiss concedes were the primary reason for her denial of per session work. (<u>See</u> Turetsky Decl. Ex. A at 132:1-4.) In particular, Defendants demonstrate that Reiss received "ineffective" ratings for deficient pedagogy and behavioral issues. (<u>See</u> Turetsky Decl. Exs. Q, R, S, T, BB, MM, NN.) Therefore, the burden shifts back to Reiss to show that her ineffective ratings were a pretext for discrimination.

At the pretext step, Reiss must set forth "evidence, viewed in the light most favorable to the plaintiff, [that] would permit a jury to find . . . that age was the 'but-for' cause of the challenged adverse employment action." <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163, 168–69 (2d Cir. 2014) (ellipsis in original) (quotation marks omitted); <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 175–76 (2009). This "is not equivalent to a requirement that age was the employer's <u>only</u> consideration, but rather that the adverse employment action[] <u>would not have occurred without it</u>." <u>Delaney</u>, 766 F.3d at 169 (emphasis and alterations in original) (quotation marks omitted). Notably, this court should "not sit as a super-personnel department that reexamines an entity's business decisions." <u>Delaney</u>, 766 F.3d at 169 (quotation marks omitted).

Reiss's evidence that age was the "but-for" cause of her "ineffective" ratings and attendant denial of per session work is insufficient to create a triable issue of fact. First, she argues that older teachers were given disproportionately worse ratings than younger teachers. But she offers no evidence specifying how younger employees receiving "effective" ratings were "similarly situated in all material respects" to Reiss or other older teachers. <u>Mattera v. JPMorgan</u>

Chase Corp., 740 F. Supp. 2d 561, 575 (S.D.N.Y. 2010) ("Absent some evidence that other employees 'similarly situated in all material respects' were treated differently, the mere fact that one employee suffered some non-facially-discriminatory disparate treatment cannot prove pretext."); see also Holowecki v. Fed. Exp. Corp., 644 F. Supp. 2d 338, 353 (S.D.N.Y. 2009) ("[Plaintiff] does identify a handful of younger couriers who 'remained employed' at his station after his termination, but fails to demonstrate how any of these individuals were treated differently under circumstances similar to his."). In fact, Reiss states in her Second Amended Complaint that several younger teachers received poor ratings and were treated poorly by Principal Hernandez, belying the argument that younger teachers were treated better. (See Compl. ¶ 15.) Nor does the raw data suggest disproportionality. In fact, for the 2014-15 school year, a larger percentage of teachers below 40 years old received ratings below "effective" than teachers 40 or older. (See Defs.' 56.1 ¶¶ 64–70; Pl.'s 56.1 ¶¶ 64–70.) Simply put, Reiss's "'feelings' and 'beliefs' are no substitute for persuasive evidence that identifiable, valid comparators were treated in a meaningfully different manner." Mattera, 740 F. Supp. 2d at 575.

Moreover, "an employee's disagreement with her employer's evaluation of her performance is insufficient to establish discriminatory intent." Mattera, 740 F. Supp. 2d at 576; see also Milano v. Astrue, 2008 WL 4410131, at *41 (S.D.N.Y. Sept. 26, 2008) ("[M]erely disagreeing with [a] supervisor's assessment of [employee's] work performance is insufficient to raise a triable issue of fact regarding pretext."). And while Reiss's overarching claim is that BOE attempted to push out older teachers for younger ones, she fails to point to a shred of evidence suggesting that younger teachers in fact replaced older teachers. Reiss also claims that two other teachers over age 50 were terminated, but she does not explain the circumstances of

those terminations or how they are related to age discrimination, beyond that the terminated teachers were over 50 years old.  See Mattera, 740 F. Supp. 2d at 575.

Finally, her evidence of alleged ageist remarks cannot carry the day.  Reiss specifically claims that (1) Principal Hernandez told her to retire because she was "'too old' to be effective at anything," (Reiss Decl. ¶ 42), (2) Principal Hernandez told Reiss to retire if Reiss was not promoted to principal after participating in the "New Leaders Program," (Reiss Decl. ¶ 42), and (3) Principal Hernandez said to Reiss that she was "a 39 year gym teacher—you can give better pedagogy than that," (Compl. ¶ 25).[5]  As a threshold matter, the first comment appears to be a mischaracterization.  In the Second Amended Complaint, Reiss alleges that Principal Hernandez wanted her to retire "because in [Principal Hernandez's] world [Reiss] was 'too old' to be effective at anything."  (Compl. ¶ 17.)  In other words, Reiss now attributes that comment directly to Principal Hernandez, whereas it initially served as Reiss's subjective view of Principal Hernandez's state of mind.  Further, the second and third comments do not bear on age.  In the second alleged comment, Principal Hernandez made no reference to age whatsoever.  And in the third, Principal Hernandez stated that Reiss should give better pedagogy based on her experience, again without referencing her age.  This is insufficient proof of pretext.  See Fried v. LVI Servs., Inc., 2011 WL 4633985, at *9 (S.D.N.Y. Oct. 4, 2011) ("[C]ourts have consistently held that remarks relating to retirement or transition planning are insufficient to defeat a motion for summary judgment in an ADEA case."); Boston v. Macfadden Pub., Inc., 2010 WL 3785541, at *11 (S.D.N.Y. Sept. 29, 2010) ("[E]ven if plaintiff was asked about his retirement plans, inquiries about retirement plans do[ ] not necessarily show animosity towards age." (second

---

[5]     Reiss also alleges other "disparaging" remarks, but she fails to provide any evidence of or specificity about those alleged remarks.  See Gorzynski, 596 F.3d at 101 ("[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and show more than some metaphysical doubt as to the material facts.").

alteration in original) (quotation marks omitted)).  Moreover, "'stray remarks' alone do not

support a discrimination suit."  Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998).  And

Reiss fails to show that the comments were "accompanied by other indicia of discrimination."

Carmellino v. District 20 of N.Y.C. Dep't of Educ., 2006 WL 2583019, at *7 (S.D.N.Y. Sept 6,

2006); see also Fried, 2011 WL 4633985, at *9.

   In addition, none of the comments were made in the context of giving Reiss her

"ineffective" ratings or denying her per session work.

> In determining whether a remark is probative, [district courts] have considered four
> factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-
> level co-worker); (2) when the remark was made in relation to the employment
> decision at issue; (3) the content of the remark (i.e., whether a reasonable juror
> could view the remark as discriminatory); and (4) the context in which the remark
> was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).  The two comments related to

retirement were made in the context of potential promotions.  And Reiss provides no context for

the "too old" comment.  Indeed, Reiss does not even specify the year in which Principal

Hernandez purportedly made that comment.  Without context, this Court cannot determine

whether the purported remark was "made in the context of the making of the employment

decision."  Jimenez v. City of New York, 605 F. Supp. 2d 485, 523 (S.D.N.Y. 2009).

Accordingly, Reiss fails to show that Defendants' purported non-discriminatory reasons were

pretextual and her discrimination claim fails.

   2. Retaliation Under the ADEA

   Reiss claims that Defendants retaliated against her by sabotaging her opportunity

to open a charter school.  (Opp'n at 5–6.)  Specifically, she claims that NYSED called Principal

Hernandez to confirm whether—per Reiss's submitted resume—she was a physical education

teacher and a "professional developer," and Principal Hernandez responded that Reiss had only

been a teacher.  To establish a prima facie case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Bucalo, 691 F.3d at 129 (quotation marks omitted); Gorzynski, 596 F.3d at 110.

Reiss's claim is meritless.  First, she fails to establish an adverse employment action because she has offered no evidence that Principal Hernandez's statement was inaccurate (or that she knew of its inaccuracy).  Reiss merely claims that because she "engaged in professional development activities," she was a teacher and "professional developer."  (Opp'n at 5.)  But she offers nothing demonstrating that "professional developer" is an actual role or title at P.S. 123, or that Principal Hernandez—or anyone for that matter—knew that Reiss filled that role, to the extent it existed.  And "engag[ing] in professional development activities" does not make someone a "professional developer."  (Reiss Decl. ¶¶ 37–38 (stating that she "did coaching and professional development," not that she was a "professional developer").)

Put simply, it does not follow that Defendants took an adverse employment action where they told the truth to Reiss's future employer.  Cf. Thompson v. Morris Heights Health Ctr., 2012 WL 1145964, at *6 (S.D.N.Y. Apr. 6, 2012) ("In the post-employment context, impermissible adverse action may be found where, for example, an employer provides an untruthful letter of reference for a former employee who complained of discriminatory conduct, [or] 'blacklists' or otherwise speaks ill of a former employee with retaliatory motive . . . ." (emphases added)); accord Salahuddin v. N.Y.C. Dep't of Educ., 2017 WL 3724287, at *3 (S.D.N.Y. Aug. 28, 2017); see also Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (explaining that "[b]lacklisting" by "besmirch[ing] reputation" could be actionable,

but presenting a "minor, ministerial stumbling block toward securing future employment" is not). Simply put, confirming whether a resume listed accurate information is not an action that "could well have dissuaded a reasonable employee in [Reiss's] position from complaining of unlawful discrimination." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019).

Second, Reiss fails to demonstrate a causal connection. A retaliation plaintiff may establish a causal connection "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Kopchik v. Town of E. Fishkill, N.Y., 759 F. App'x 31, 35 (2d Cir. 2018) (quoting Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015)); accord Delville v. Firmenich Inc., 920 F. Supp. 2d 446, 463 (S.D.N.Y. 2013). Reiss offers no evidence of retaliatory animus, beyond her ipse dixit. And as discussed above, there is no indication that Principal Hernandez's statement was inaccurate or that she knew it was inaccurate.

Reiss also fails to demonstrate temporal proximity. She filed her EEOC charge on July 1, 2016 and this lawsuit on January 1, 2017. (Defs.' 56.1 P 116-17.) But NYSED contacted Principal Hernandez sometime in early 2018—and likely after February 2018. (Defs.' 56.1 ¶ 109–10; Pl.'s 56.1 ¶ 109–10; Turetsky Decl. Ex. C at 215:2–216:9.) This is beyond the temporal proximately typically used to demonstrate causation. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (quotation marks and citations omitted)); Preuss v. Kolmar

Labs., Inc., 970 F. Supp. 2d 171, 198 (S.D.N.Y. 2013) (holding that three months was "not sufficiently close to establish a causal connection"); De la Cruz v. City of New York, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011) (holding that six months was not sufficiently close); Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation . . . ."). Accordingly, Reiss's retaliation claim fails.

        3.   Constructive Discharge Under the ADEA

        Constructive discharge is merely a type of adverse employment action that can form the basis for a discrimination claim. A constructive discharge "occurs when an employer 'deliberately makes an employee[']s working conditions so intolerable that the employee is forced into an involuntary resignation.'" Nicholls v. Philips Semiconductor Mfg., 760 F. Supp. 2d 407, 416 (S.D.N.Y. 2011) (quoting Spence v. Md. Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993)). Specifically, Reiss must show that her "working conditions were 'so difficult or unpleasant that a reasonable person in [her position] would have felt compelled to resign.'" Nicholls, 760 F. Supp. 2d at 416 (quoting Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003)). "This burden is not an easy one to carry." Nicholls, 760 F. Supp. 2d at 416. And "[c]onstructive discharge cannot be shown if the employee merely 'disagreed with the employer's criticisms of the quality of h[er] work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." Shapiro v. N.Y.C. Dep't of Educ., 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) (quoting Spence, 995 F.3d at 1156). Finally, "[c]onstructive discharge also requires deliberate action on the part of the employer—specifically, the intent to create

intolerable workplace conditions."  Silberman v. Atl. Dialysis Mgmt. Servs., LLC, 2018 WL 4335510, at *4 (S.D.N.Y. Sept. 11, 2018) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F. 3d 62, 74 (2d Cir. 2000)).

   Reiss claims that she was constructively discharged because the two consecutive annual "ineffective" ratings she received automatically triggered a § 3020-a proceeding against her, and if she were terminated as a result of such a hearing, she would not be eligible for future teaching jobs.  (Opp'n at 6.)  Simply put, Reiss claims that her ineffective ratings forced her to resign so that she could continue teaching.

   Reiss's claim fails as a matter of law.  First, Reiss's assertion that a § 3020-a proceeding is automatically triggered by two consecutive "ineffective" ratings is dubious. "Pursuant to [changes to the] Education Law § 3020–b [effective in July 2015], the DOE may bring [§ 3020-a] charges of incompetence against any teacher who receives two consecutive 'ineffective' ratings."  Brown v. City of New York, 52 N.Y.S.3d 245, at *2 (N.Y. Sup. Ct. 2017) (emphasis added).  This standard is clearly permissive, not mandatory.

   Second, Defendants did not initiate § 3020-a proceedings, belying any argument that Defendants gave Reiss "ineffective" ratings to force her to resign.  See Silberman, 2018 WL 4335510, at *4.  And third, even if such a proceeding had been automatically triggered, it is not a sufficient basis on which to form a claim of constructive discharge.  See Bailey v. N.Y.C. Bd. of Educ., 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007) ("The fact that the BOE brought § 3020–a charges against Plaintiff does not, in itself, create an intolerable work atmosphere converting Plaintiff's resignation into a constructive discharge.").  Specifically, Reiss was not guaranteed to lose her job because of a § 3020-a proceeding.  Rather, she could have "disputed the negative ratings" at any hearing or even settled them before one took place.  Culmone-Simeti v. N.Y.C.

Dep't of Educ., 2018 WL 3384437, at *5 (S.D.N.Y. July 11, 2018). Indeed, in Culmone-Simeti, a judge in this district held that a teacher was not constructively discharged where she entered a settlement agreement which dropped "the § 3020-a charges based on her ineffective ratings in exchange for her resignation." Culmone-Simeti, 2018 WL 3384437, at *2. Accordingly, Reiss's constructive discharge claim fails.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962). The Clerk of Court is directed to terminate all pending motions, mail a copy of this Memorandum & Order to Reiss, and mark this case closed.

Dated: September 26, 2019
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.